**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

GERALD THOMPSON,

      Plaintiff,

      v.

WARDEN ERDOS, et al.,

      Defendants.

Case No. 1:16-cv-812

Dlott, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff, an incarcerated individual who proceeds *pro se*, tendered a complaint against multiple Defendants on August 4, 2016, and amended his complaint on November 29, 2016.[1] After Plaintiff corrected several procedural deficiencies, the undersigned entered an Order that granted Plaintiff's motion to proceed *in forma pauperis* against some of the identified Defendants, while recommending dismissal of many of Plaintiff's claims and defendants.[2] Pursuant to local practice, this case has been referred to the undersigned for initial consideration and for a report and recommendation on any dispositive motions. The undersigned now recommends that Defendants' pending motion

---

[1]Plaintiff has filed seven civil rights cases concerning his conditions of confinement, including six in this district and one in the Northern District of Ohio. In addition to the above-captioned case, cases filed in the Southern District of Ohio include: Civil Case No. 1:14-cv-935, Case No. 1:15-cv-553, Case No. 1:16-cv-770; Case No. 1:18-cv-24; and Case No. 2:17-cv-461. *See also Thompson v. Koch*, Case No. 1:15-cv-1746 (N.D. Ohio Aug. 28, 2015). All but the instant case have been dismissed. Plaintiff also has filed two petitions for writ of habeas corpus in the Northern District of Ohio, Case No. 1:16-cv-767 (transferred from this district) and Case No. 1:16-cv-2270, both of which petitions have been dismissed. To date, Plaintiff has pursued eight unsuccessful appeals in the Sixth Circuit Court of Appeals.

[2]At the time that this case was filed, Plaintiff was not subject to the "three-strikes" provision of the Prison Litigation Reform Act ("PLRA"). However, Plaintiff is now prohibited from filing further cases *in forma pauperis* unless he falls within the statutory exception of 28 U.S.C. § 1915(g). Plaintiff's most recent complaint was dismissed pursuant to that provision, and because Plaintiff failed to immediately pay the full filing fee. *See* Case No. 1:18-cv-24 (Docs. 7, 10, 11).

for summary judgment (Doc. 46) be GRANTED, that Defendants' motion to strike

Plaintiff's untimely second amended complaint (Doc. 51) be GRANTED, that all other

pending motions be denied, and that this case be dismissed.

## I.    Procedural Background

As stated, despite dismissing multiple claims and defendants, the undersigned

concluded that certain claims and defendants survived the frivolousness standard, and

therefore should be permitted to proceed.

> [P]laintiff's Eighth Amendment claims may proceed against defendant
> Tackett based on plaintiff's allegation that Tackett forced him to perform
> sexual acts on May 6, 2016 and used excess force against him on June 7,
> 2016. Plaintiff has also stated a plausible excessive force claim against
> defendant Payne, based on his allegation that Payne assaulted him with
> mace. Plaintiff's failure to protect claim against defendants Cool and Davis,
> based on their alleged failure to provide him with protective custody, is
> deserving of further development and may also proceed at this juncture.
> *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b). Finally, plaintiff may proceed
> with his retaliation and Eighth Amendments claims against Dillow and
> Sears, based on his allegations in the amended complaint that Dillow
> deployed a large can of mace in his face and that Sears subsequently
> denied plaintiff a decontamination shower [on September 22, 2016] in
> retaliation for filing civil rights complaints.

(Doc. 11 at 7-8).[3]

Discovery in this case closed on November 30, 2017.  On March 12, 2018, all

Defendants filed their motion for summary judgment, to which Plaintiff filed a response,

---

[3]The claims were permitted to proceed in this action despite bearing more than a passing resemblance to claims asserted in other cases.  *See e.g.*, Case No. 1:15-cv-553 (Doc. 78, granting summary judgment on Plaintiff's claim that Defendants Cool and Davis failed to assign him to protective custody in a failure to protect claim), *see also* Doc. 23, dismissing claims against certain defendants for their alleged "big dog/pet cannibal dehumanizing practices").  The undersigned has previously noted that in addition to the rambling and sometimes incoherent nature of the allegations, some of the conduct alleged is so outrageous that the Court must at least entertain the idea that Plaintiff (who acknowledges a history of mental health treatment) may be delusional. However, allegations involving outrageous conduct by prison guards, including but not limited to extreme violence or repeated sexual assaults, often are permitted to proceed beyond initial screening.

and Defendants filed a reply.  (Docs. 46, 49, 50).

After Defendants filed their motion for summary judgment, Plaintiff also filed an "Amended Complaint" without leave of Court.  Defendants have moved to strike that pleading. (Doc. 51).  In addition, Plaintiff has filed a number of motions, including two Motions for an Order to Show Cause (Docs. 52, 56), a Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. 53),[4] two additional Motions for Preliminary Injunction (Docs. 55, 58), and a Motion for Docket Sheets (Doc. 57).

## II.    Analysis of Summary Judgment Motion

### A.  Standard of Review.

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986).  A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986).  The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986).  Once the moving party has met its burden of production, the nonmoving party cannot rest on the pleadings, but must present significant probative evidence in support of his case to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 248-49.

---

[4]The same document was simultaneously docketed as a "supplemental memorandum" (essentially an unauthorized sur-reply) in opposition to Defendants' motion for summary judgment.  (Doc. 54).

The mere scintilla of evidence to support the nonmoving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. *Id.* at 252.  As Plaintiff is a pro se litigant, his filings are liberally construed.  *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005).  However, his status as a pro se litigant does not alter his burden of supporting his factual assertions with admissible evidence when faced with a summary judgment motion.  *Maston v. Montgomery Cnty. Jail Med. Staff Personnel*, 832 F. Supp. 2d 846, 851-52 (S.D. Ohio 2011) (citing *Viergutz v. Lucent Techs., Inc.*, 375 Fed. Appx. 482, 485 (6th Cir. 2010)).

## B.  Plaintiff Has Failed to Exhaust his Administrative Remedies

Defendants' motion for summary judgment seeks judgment as a matter of law on grounds that Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a) of the PLRA.   The undersigned takes judicial notice of the fact that Defendants have prevailed using the same argument in two of Plaintiff's prior cases, Case No. 1:14-cv-935 and Case No. 1:15-cv-553.  Based upon the evidence presented, the undersigned agrees that the instant claims are similarly barred based upon Plaintiff's failure to exhaust.

Pursuant to the PLRA, prisoners are required to fully exhaust available institutional remedies prior to filing suit in federal court.  *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").  The Supreme Court has held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they

4

allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.

Ct. 983 (2002).

It is well established that such exhaustion is "mandatory under the PLRA and

unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 201, 211, 127

S. Ct. 910 (2007). The PLRA requires "proper exhaustion of administrative remedies,"

meaning all applicable procedures and deadlines must be followed. *Woodford v. Ngo*,

548 U.S. 81, 84, 90-91, 126 S. Ct. 2378 (2002). The exhaustion requirement's goals can

be achieved "only if the prison grievance system is given a fair opportunity to consider the

grievance." *Id.* at 82. "That cannot happen unless the grievant complies with the system's

critical procedural rules." *Id.* If a prisoner fails to exhaust available administrative

remedies before filing a complaint in federal court, or only partially exhausts them, then

dismissal of the complaint is appropriate. *Hopkins v. Ohio Dep't of Corr.*, 84 Fed. Appx.

526, 527 (6th Cir. 2003) (citing 42 U.S.C. § 1997e(a) and *White v. McGinnis*, 131 F.3d

593, 595 (6th Cir. 1997)). "Exhaustion may not be completed after a federal complaint

has been filed." *Hopkins*, 84 Fed. Appx. at 527 (citing *Freeman v. Francis*, 196 F.3d 641,

645 (6th Cir. 1999)). "In a claim by a prisoner, failure to exhaust administrative remedies

under the PLRA is an affirmative defense that must be established by the defendants."

*Napier v. Laurel Cnty.*, 636 F.3d 218, 225 (6th Cir. 2011) (citing Jones, 549 U.S. at 204).

The Ohio Department of Rehabilitation and Correction ("ODRC") offers a three-

step grievance system to every inmate at each of its institutions. Ohio Admin. Code §

5120-9-31(K) (2013). All inmates and staff members receive a written explanation of the

grievance system and instructions for its use. Ohio Admin. Code § 5120-9-31(C). The

first step of the grievance procedure allows inmates to submit an informal complaint to

5

the supervisor of the department or staff member directly responsible for the issue concerning the inmate, but requires any such complaint or grievance to be submitted no later than fourteen days from the date of the event giving rise to the grievance. Ohio Admin. Code § 5120-9-31(K)(1).  Inmates dissatisfied with the results of step one may proceed to step two by obtaining a Notification of Grievance form from the Inspector of Institutional Services and filing a formal grievance at the prison where the inmate is confined. Ohio Admin. Code § 5120-9-31(K)(2).  Formal grievances must be submitted within fourteen days from the date an inmate receives a response to his informal complaint at step one. Ohio Admin. Code § 5120-9-31(K)(2).

If dissatisfied with the results of his formal complaint at step two, the inmate may proceed to step three of the grievance process by requesting an appeal form from the Office of Inspector of Institutional Services and submitting the appeal form to the Office of the Chief Inspector at ODRC. Ohio Admin. Code § 5120-9-31(K)(3).  The step three appeal must be filed within fourteen days of the date of the disposition of his formal complaint. Ohio Admin. Code § 5120-9-31(K)(3).  The Chief Inspector is to provide a written response within thirty calendar days of receiving an appeal, unless he extends the timeframe for good cause and notifies the inmate. Ohio Admin. Code § 5120-9- 31(K)(3). Decisions of the Chief Inspector are final, meaning that the Ohio Administrative Code provides no further means for appeal. Ohio Admin. Code § 5120- 9-31(K)(3).

Turning to the record presented, Defendants persuasively argue that Plaintiff has failed to fully exhaust his administrative remedies for any of the four claims that remain in this case:  (1) the sexual abuse and excessive use of force claims against Defendant Tackett relating to incidents on May 6, June 7, and possibly September 22, 2016; (2) the

excessive use of force claim against Defendant Payne based on the use of mace on or about September 22, 2016; (3) claims against Defendants Dillow and Sears for retaliatory conduct on September 22, 2016; and (4) failure to protect claims against Defendants Cool and Davis for refusing to provide him with protective custody.

In response to a motion for summary judgment, Plaintiff is required to point to a genuine issue of material fact concerning his failure to exhaust.  Plaintiff's response fails to do so.  Instead, in the relevant portion of his response, Plaintiff argues:

> In accordance to Admin. R. 5120-9-31 if I feel the institutions inspector or the warden boke a rule then I can file a grievance *directly to the Chief Insp. This is exactly what I did on all Defendants in this case.  However, I had to label a informal complaint *Emergency Grievance.  Due to S.O.C.F. Inst. Insp. failing to provide me with a Grievance.  So it was denied by the Chief Insp.  The rule the Ins. Insp. & Warden broke & continue to break is allowing a ongoing customary practice & encouragement of reprisal retaliation & campaign of harassment for seeking redress for my grievances in a U.S. District Court by 1st "exhausting administrative remedies."  Which in my case "begins the retaliation customary practice" of outright denial of required documents to exhaust administrative remedies.

Doc. 49 at 2 (modest corrections for legibility).  The remainder of Plaintiff's response is rambling and difficult to follow.  However, the response appears to reiterate some of the claims made in his original complaint, as amended, including allegations that relate to previously dismissed claims as well as new allegations unrelated to this lawsuit.

Plaintiff's assertion that he was entitled to skip steps two and three of the grievance procedure is not supported by Ohio law, which permits an inmate to file a formal grievance directly with the Office of Chief Inspector only under specific circumstances that are not present here.  See Ohio Admin. Code § 5120-9-31(M).  Unsurprisingly, Plaintiff provides no evidence, such as copies of the alleged "emergency grievances" or the Chief Inspector's response, to support his cursory argument that he ever filed such documents.

By contrast, the record evidence submitted by the Defendants confirms that – *at most* – Plaintiff has satisfied only step one of the three-step grievance procedure. The institutional record reflects no grievances to the Office of the Chief Inspector were filed. Rather, records reflect that Plaintiff filed a total of 21 informal complaints and four formal grievances between January 1, 2015 and October 5, 2016, the date of his last amended complaint in this case.[5] (*Id.* at ¶8).

Defendants contend that Plaintiff filed only Informal Complaints concerning no more than three out of the four claims that remain in this case.  For one of the four claims, Plaintiff failed to satisfy step one by submitting even an informal grievance. (Doc. 46-8, Declaration of Eugene Hunyadi at ¶¶8-11).

Though not a focus of Defendants' argument, the referenced collection of informal grievances do not correspond with the referenced dates of the claims at issue in this lawsuit.  For example, in this lawsuit Plaintiff has alleged the excessive use of force by Defendant Tackett and Defendant Payne on May 6, June 7, and September 22, 2016, and a retaliatory denial of a decontamination shower by Defendant Sears on September 22, 2016.  Yet, the only use of force grievances that Plaintiff filed complain about incidents dated February 20, 2015, November 25, 2015, and December 21, 2015.  Plaintiff complained of "retaliation" in an informal complaint filed on August 8, 2016 – but that date also does not correspond with the alleged retaliatory spraying of mace and alleged denial of a decontamination shower on September 22, 2016 - the basis of his retaliation claim before this Court.  Moreover, Plaintiff has never filed *any* informal complaints or

---

[5]Institutional records submitted by Defendants reflect that between March 2007 and January 10, 2018, Plaintiff has submitted a total of 97 grievances, the vast majority at SOCF. (Doc. 46-1).

grievances that alleged any failure to protect by Defendants Cool and Davis. (*Id.* at ¶9).

Even if the complaints made in the grievances corresponded more closely with the claims presented, the undisputed evidence confirms that Plaintiff failed to complete the second or third steps of the grievance procedure as required by Ohio Admin. Code 5120-9-31(K). Therefore, he has failed to fully exhaust his administrative remedies for any of the four claims. Under Rule 56(e), Fed. R. Civ. P., the legal argument and undisputed evidence provided by Defendants provides a sufficient basis on which to grant summary judgment.

Though not required to do so, in the interests of justice and pursuant to Rule 56(c)(3), the Court has taken the additional step of examining the various grievance forms attached by Plaintiff to multiple motions and documents filed throughout the record. (*See* Attachments to Docs. 9, 12, 13, 24, 28).[6] Many of the attached forms do not pertain to this case or appear to have been generated for submission to this Court rather than to Institutional authorities. Even when allegedly submitted to Institutional authorities, the documents fail to show exhaustion for numerous reasons, including but not limited to the fact that virtually all post-date the filing date of this lawsuit. For example, an Informal Complaint attached as an exhibit to one of Plaintiff's numerous motions for preliminary injunctive relief in this case appears to be addressed to the "Chief Inspector" but is dated November 1, 2016. (Doc. 9-1). The 7-page handwritten informal complaint form does

---

[6]Plaintiff also included handwritten additional informal grievance forms in the body of a Motion to Place Addendum to All Above Listed Cases. (Doc. 14). The forms are undated and do not appear to have been submitted to any institutional authority. Plaintiff's motion was denied in part as an improper additional amendment. (Doc. 19). Even if considered, the documents do not change the conclusion that Plaintiff did not proceed beyond the first step of the Ohio grievance procedure for any claim in this case.

9

not indicate on its face that it was actually submitted to or reviewed by anyone at S.O.C.F. (*Id.*) Even if the informal complaint had been submitted, Plaintiff's rambling general complaints about his treatment between 2009 and 2016 could not be considered to be adequate exhaustion of the claims at issue. Another exhibit, attached to another motion filed with this Court, appears to be a handwritten note (not an informal grievance form) sent to the Inspector that complains of another inmate's conduct on December 4, 2016, requesting a move to another cell area. The note is stamped "Received December 6, 2016." (Doc. 12 at 8). The response reads: "Follow AR 5120-9-31. File & send ICR [informal complaint form] to appropriate Shift Captain." (*Id.*)

Plaintiff attached an additional Informal Complaint form, bearing the date of December 1, 2016, to his Objections to a prior R&R. (Doc. 13). That form also post-dates the filing of the complaint. In addition, although purportedly addressed to Institutional Inspector Mahlman, the form lacks a date stamp or other indication it was received. (*Id.* at 11). The document contains rambling allegations not tied to specific conduct or specific dates.

The handwritten Informal Complaint forms filed with Plaintiff's unsuccessful construed motion to amend, (Doc. 14), are undated and appear directed to this Court; they also bear no indication that they were submitted to anyone at S.O.C.F. Plaintiff also attached two multi-page Informal Complaint forms, dated January 27, 2017 and February 2, 2017 and addressed to Unit Manager Niece, to additional Objections to an R&R. (Doc. 24 at 9-15, *id.* at 16-18). In addition to post-dating this lawsuit, the January form does not relate to this case and the February form only vaguely references alleged verbal harassment. (*Id.*) Last, Plaintiff attached an Informal Complaint to Objections to an R&R

10

filed on March 6, 2017. That form also post-dates this lawsuit. Though ostensibly addressed to "Chief Inspector and M. Casey, I.I.C.," the form bears no indication of receipt or any response. (Doc. 28).

In sum, the Defendants have clearly demonstrated that there is no genuine dispute as to any material fact concerning Plaintiff's failure to exhaust his administrative remedies prior to filing this federal lawsuit. Because Plaintiff did not comply with the mandatory exhaustion requirements of the PLRA, Defendants are entitled to summary judgment as a matter of law.[7]

### III.     Defendants' Motion to Strike Amended Complaint

On April 19, 2018, Plaintiff filed an amended complaint that purports to add new claims and facts. (Doc. 48). Plaintiff did so without leave of Court, and without the consent of the Defendants. This Court allowed Plaintiff one amendment, but previously denied other proposed amendments. (*See* Doc. 19). For the reasons stated by the Defendants, (Doc. 51), Plaintiff's latest amended complaint is procedurally improper and should be stricken from the record.

### IV.     Miscellaneous Motions by Plaintiff

Many of Plaintiff's motions seek temporary restraining orders or preliminary injunctions. Due to their repetitive nature, the Court previously ruled that any future such motions filed by Plaintiff would be summarily denied and stricken from the record without further comment. (*See* Doc. 42; *see also generally* Docs. 19, 20, 38, 41). Given the recommended disposition of this case on summary judgment, however, the undersigned

---

[7]Because the Defendants are entitled to judgment on this procedural issue, the undersigned finds no need to address alternative arguments on the merits of Plaintiff's claims.

11

recommends that all of Plaintiff's remaining motions be denied as moot. (*See* Docs. 52, 53, 55, 56, 57, 58).

## V. Conclusion and Recommendations

For the reasons stated, **IT IS RECOMMENDED THAT** Defendants' motion for summary judgment (Doc. 46) be **GRANTED**, and that the motion to strike the amended complaint (Doc. 51) also be **GRANTED**, with the amended complaint filed on April 19, 2018 (Doc. 48) to be **STRICKEN** from this record. **IT IS FURTHER RECOMMENDED THAT** Plaintiff's remaining motions (Docs. 52, 53, 55, 56, 57, and 58) be **DENIED as moot** and that this case be **CLOSED**.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

GERALD THOMPSON,

      Plaintiff,

      v.

WARDEN ERDOS, et al.,

      Defendants.

Case No. 1:16-cv-812

Dlott, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).